Is Judge Colliton on? Judge Colliton and Judge Kelly up here. Let's see if they'll unmute their mics and turn their cameras on. There's one in blue and one... There you go. Okay, they're waiting. And then Judge Kelly. Did you put my camera on? Yes. Okay. All right, everyone is here. So why don't you call the case for argument this morning. Okay, I'll go ahead and open court. Please. The Honorable, the judges of the United States Court of Appeals for the Eighth Circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the Eighth Circuit is now in session. All persons having business before this honorable court may now draw near and they will be heard. God save the United States and this honorable court. The first case for argument is case number 23-1457 from the Western District of Missouri, United States v. State of Missouri et al. Good morning, counsel and my colleagues in Iowa. Mr. Devine, I believe we're ready if you are. Good morning and may it please the court. Joshua Devine, Solicitor General on behalf of the state. This is not a Second Amendment case. It is a Tenth Amendment case. The Missouri legislature believes that certain federal statutes are unconstitutional. And so it told state agencies, don't use state resources to help enforce those laws. Now under Prince v. United States, that is a core exercise of Tenth Amendment authority. And no amount of nullification rhetoric can change that. I want to leave the court today with three points. First, I'm going to hit the jurisdictional issue. Then I'm going to discuss the district court's principal holding, which is a nullification holding. And third, I'm going to discuss the district court's back holding. I'll begin first with the fundamental jurisdictional problem, which is that the United States has not named a single proper defendant. And the key case here is the digital recognition network case that Judge Colleton, you wrote and Judge Kelly, you joined. And with one exception, the digital case is on all fours with the case we have here. Like here, those plaintiffs sued the attorney general and the governor, this was in Arkansas, to challenge a statute. And like here, the statute authorizes enforcement only by private plaintiffs. And so this court dismissed for lack of jurisdiction. Now, my friend on the other side says, well, we've identified the statute. It gives the attorney general of Missouri general authority to appear in court to serve the state's interests. But that general authority does not give us specific authority to enforce this specific statute. And in fact, the Arkansas attorney general had the exact same authority in the digital case. And this court said, that's not enough. You need a specific authority to enforce this specific statute. The court said the same in the case, Calzone against Hawley, which Judge Colleton, you wrote that one, too. This was a case against the Missouri attorney general and the court held, and I quote, general executive responsibility is an insufficient connection to the enforcement of a statute. So then my friend on the other side says, well, if they're not enforcing it, at least they're, quote, unquote, implementing it because the attorney general and the governor obey the statute. Why doesn't it? Counsel, why doesn't Emory Debs avoid this issue? I don't see any way of getting around digital recognition network, given that it's on all fours with this case. Really, the only difference between digital recognition network and this case is that they have sued the state. What? Where's where's the missing? Where is the no proper defendant named? So the problem is, again, that is the only difference between this case in that case. And the reason that it's a huge difference, it's a huge difference. So the reason that's not enough is if you look at page 40 of their brief, they identify their cause of action as ex parte. Ex parte young is, of course, the cause of action gets state officials, not states. They've never identified any statute that gives them the cause of action against the state of Missouri. There are lots of different statutes. Voting Rights Act is one. They haven't identified a single one that gives them a cause of action against the states. And the fundamental problem they've got here is they can't identify a single act done by the attorney general, the governor that that has actually harmed them. Now, counsel, counsel, what on the section one point four four. Oh, it shall be the duty of courts and law enforcement agencies of the state. What work is that doing in the statute? It does. Absolutely. Absolutely nothing. And I think for three reasons. And isn't it isn't going to be relevant here at all. I'll go in order. First, the Missouri Supreme Court has said that that provision is purely declaratory. So this is a lot like. Let's let's assume for the sake of this. This question and answer that the Supreme Court of Missouri has not answered this direct question. OK, OK. So I think this is a lot like the Affordable Care Act case, California against Texas, where the Affordable Care Act says you have a duty to purchase health insurance. But there's no enforcement mechanism there. And so the Supreme Court said, well, it declares that there's this duty, but there's no enforcement mechanism. So you can't challenge that statutes. And here, even under the most uncharitable reading of this provision, if somebody disagrees and says, OK, hey, the court or law enforcement agency isn't complying with this. There's no enforcement mechanism, not even by private agencies for the statute. So California against Texas is directly on point. And they also haven't identified a single obstacle imposed by any law enforcement agency or courts. So a claim here is unripe. Now, if the court if the court disagrees with us on all those issues, you know, I don't want to push back too strongly because it's our position that this provision really doesn't do anything. It's purely support superfluous. It's toothless and it's plainly severable. The district court didn't deny that either. So in in candor, I think I have to tell the courts that it would exceed the court's jurisdiction to strike down this provision. But, you know, I don't think we're going to push back too hard because this provision really isn't any of the operative provisions in the statutes. On the nullification point, the district court spent 10 out of 11 pages fixated on two provisions, one point for two and one point for three. Oh, and held that each of these independently violate the Constitution. But even a quick review of these provisions reveals just how flawed that argument is. If we look at one point for three zero, this is an entirely unobjectionable restatement of black letter law. It merely states that if a federal statute is unconstitutional, then the statute is invalid, which, of course, is true. This provision isn't singling out any federal statutes. It's simply creating this generic black letter statement. Now, the other provision, one point four to does, in fact, contends that five categories of federal law violate the Second Amendment. And this, of course, said that's enough to make this unconstitutional on its face. But this provision by itself on its own does nothing other than express a constitutional interpretation. That's not nullification. That's nothing like Jim Crow, where you had state police blockading schools to prevent compliance with federal desegregation orders. The rhetoric by the United States here is way off base. It's good for shock value only. In fact, this is the same exact unsuccessful playbook that the United States use in the Texas abortion cases that we cite. There, the Supreme Court said the nullification rhetoric, and I quote, wildly mischaracterizes the statute and quote, cheapens the gravity of past wrongs. The district court looked at one point four to an isolation and said a mere expression of a constitutional interpretation nullifies a statute. That can't be true. No better is a district court's one page ruling striking down the rest of the statute. I'll walk through each one of these in order. I already hit one point four four zero. So I'll go to one point four five zero. This is sort of the core Tenth Amendment provision. This is the one that directs state officials not to enforce certain federal statutes. And the district court said, well, this is problematic because it says no entity may enforce these federal statutes. And it said no entity includes the federal government. Two problems with that. Number one, the Missouri Supreme Court already held that this that this strips authority only from Missouri entities. And of course, the Missouri Supreme Court is the authoritative body with respect to state law. And number two, there's the canon of constitutional avoidance. If there are two reasonable interpretations, the court has a plain duty to pick the one that is constitutional. And here it is reasonable to determine that when the legislature of legislature of Missouri says no entity, it means no Missouri entities. So then we get to the next two provisions, one point four six zero and seven zero. These are the provisions that prohibits state agencies from employing certain people who have enforced these five categories of federal law. And the district court said, well, this is problematic because it prohibits state officials who are deputized from enforcing federal law. But of course, that's the whole point of Tenth Amendment authority. That's exactly what you are allowed to do under the Prince against United States case. Counsel, I'm looking at the text of the Tenth Amendment and I don't your argument does nothing for me. It said the power is not delegated to the United States by the Constitution, which includes the article one section eight power to legislate for the welfare of the people. So that's that's not within the within the Tenth Amendment. That's excluded from the reach of the Tenth Amendment as our as our powers prohibited by the Constitution to the state, which includes the supremacy clause. So I don't see where this is a Tenth Amendment case. It's a Tenth Amendment case because under the Prince against United States case case, the Supreme Court expressly held that states have authority to to tell their state agencies to refuse to help enforce certain federal laws. You know, the United States against California case, which the amicus brief, the firearms coalition cited is exactly the same. And that's all the state is doing here. The state. I don't think I'm sorry. I don't think it carries that much weight. I mean, that's a commandeering case. And that's exactly what one point four or five zero is doing is it's simply telling state officials don't help enforce these laws under the Murphy case, under the Prince case, under the New York case. We have it. We have a right as a state not to do that. Under the United States against California cases cited in the firearms coalition amicus brief, same exact sort of thing where California decided it wasn't going to assist with enforcement of federal immigration laws. And the Ninth Circuit said that's absolutely within California's rights under the Tenth Amendment to do that sort of thing. So here we have a state legislature could in a statutory preamble say the federal the federal government in the opinion of the state of Missouri or the state of X is completely exceeding the powers this constitution gives to the federal government. And therefore, we hereby direct all state officials to obey no state to to obey or or assist in the enforcement of any federal law. Well, I think if you said so that they have a right not to assist in the enforcement of federal law. Now, if there's a if there's a situation where somebody is imposing an obstacle, then the United States would be on very strong grounds to come in and get an injunction against that specific kind of act. So but as far as a preamble, things of that nature, you know, the state of Missouri or any state in the union, when we're talking about when we're talking about portions of a statute that are declaratory, you know, a legislature can put in there whatever it wants. It can put in there the sky is purple if it wants. The lesson of digital recognition network and the whole woman's health case is that courts cannot strike down statutes. They can only strike down enforcements of statutes. And what did you just say? You just said something that sounds absolutely wrong to me. What what was the I didn't hear the citation. Digital recognition network and whole woman's health, whole woman's health is the 2021 case from the U.S. Supreme Court. That is pretty much in line with digital recognition network. I see. I'd like to. Unless there are further questions right now, I'd like to reserve the rest of my time for rebuttal. Very good, Mr. Sandberg. Good morning, your honors, and may it please the court. Jeff Sandberg for the United States. The district court properly recognized that this truly extraordinary statute is not one that our federal system of government allows the state to enact. This is not a routine matter of resource allocation. As you just heard Missouri Solicitor General argue, HB 85 is unlike any statute this court has ever seen. And it makes no effort to adhere to longstanding constitutional norms. Everything in HB 85 is not premised on any policy disagreement or even on a mere opinion or legal view that federal law is unconstitutional. Rather, the entire architecture of the statute is built on an affirmative declaration with the force of state law that federal law is unconstitutional. It's placing its imprimatur on that. And it is speaking to state courts, state law enforcement officials, indeed, the citizenry of the entire state, saying that the federal government is acting unconstitutionally. And it says that citizens, whether they're in the case of 1.470, don't even need to be injured. It can bring a lawsuit against anyone who works for the state who they suspect of interfering. Sorry, on 1.470, it's the employment provision. But citizens can sue if they suspect that any state official under 1.460 is assisting the federal government. And that is not something that states are allowed to do. I mean, this does a number of exceedingly odd things that go well beyond any normal effort to guide the state's law enforcement activities. The employment provision, I think, is particularly striking. It tells state law enforcement officials they have to pay massive fines if that agency hires a former federal employee. And that's not like a budgetary consequence. That's a bounty awarded to private citizens who may not have suffered any injury beyond residing or doing business. May I ask, what provisions of the Constitution you're relying on, as opposed to all addicted from here and there for 200 years? We're relying on the Supremacy Clause. And there are a number of doctrines that grow out of the Supremacy Clause. You can't nullify federal law. Federal law preempts contrary state law. There's a doctrine of intergovernmental immunity. And, of course, we are accountable for the constitutionality of our laws. Federal courts have the power to strike down federal laws that are unconstitutional. The Supreme Court has the constitutionality of 922G8 before it right now. State legislatures, however, do not have the power to declare and speak to the people of their state and create clauses of action, a declaration that federal law is unconstitutional. The Supreme Court said in Cooper v. Aaron, the federal judiciary is supreme in the exposition of the law of the Constitution. And that is a permanent and indispensable feature of our constitutional system. I wanted to speak directly to Provision 1.450, which opposing counsel says is maybe the one provision it thinks does any work. I would dispute the premise that those other provisions are merely declaratory. It is telling the people of the state that the law can't be enforced. That is not something states are allowed to do. But speaking just to 1.450, the provision doesn't—it's not written as withdrawing resources from federal law enforcement. It says no entity or person, including any public official or employee of the state, can enforce federal acts that infringe on the right to bear arms as defined in 1.420. It is saying don't enforce the laws that we have hereby declared to be unconstitutional. And so when you excise that, when you excise the nullification from that, there's nothing left for that provision to do. Suppose—let me ask you this—suppose the statute just said the state has decided not to allocate any resources to enforcing those laws, and therefore no officer may assist or cooperate with the enforcement of those federal laws. Would that be permissible? It could do that. It has the ability under Prince to decide to refuse to help law enforcement. But that does not convey an affirmative right to impose duties to protect against federal law, to penalize state agencies that hire former federal officials, to tell state officials who are wearing their federal hat, as the state allows them to do, that are deputized state officials, this law is telling them that when they're wearing their federal hat, they can't enforce federal law. And that is something that they cannot do. What they can do is withhold resources, but there's no way to blue pencil the statute and get to a statute like that. And so I think the district would properly recognize that if the state wishes to avail itself of its room to withdraw resources, it can enact a statute that says that. Why couldn't the state say it would decline to hire anybody who's a former federal law enforcement agent? Because that's discriminating against the federal government. The doctrine of intergovernmental immunity says that state can discriminate against the federal government or those with whom it deals. And this provision doesn't say you can't hire a former Illinois law enforcement official, even though Illinois, like the federal government, bars domestic violence abusers from possessing handguns. So, you know, why are we singling out the federal government and not others that are enforcing the exact same type of law? May I ask you a question on standing? Yes. As I understand your standing argument, you've got three or four initial alleged injuries that arise from the withdrawal of the state assistance, the lack of cooperation on the task forces, information sharing, and so forth. The cases, some of the cases on standing talk about legally cognizable injury. What is your understanding of what that means? And if the federal government may not require the sort of cooperation that's been withdrawn, how is it a legally cognizable injury if that support or cooperation or sharing is withdrawn? Yeah, that strikes me as a very radical argument, because it's essentially saying you need to have a proper interest in whatever you've been deprived of in order to have standing to sue on that. And that's never been the law. States aren't entitled to federal funds. But if the federal government withholds funds in a way that the state maintains is illegal, the state can sue over that. Just the same goes for us. If our law enforcement efforts are being hindered, rendered less effective or less efficient, that is an injury. And on the merits, the state can argue. And if had the state written a very different law here, they would win on the merits and say it's perfectly fine. You know, as in the United States versus California, no question the United States had standing to sue there. But on the merits, the United States lost, because all that that California law did was withdraw resources. It didn't purport to declare federal law unconstitutional. It didn't impose any duties. It didn't tell the citizenry that they could sue state law enforcement officials that helped federal government. So I think, you know, that mentions traditional recognition. What do you think it takes to be a legally cognizable injury? What do you think that means? In the history and tradition of the country. And I don't think that the Supreme Court has ever distilled that down to one exact test. But certainly the fact that in rate debts, sanitary district of Chicago, United States versus Minnesota, we've got, you know, centuries, more than a century of precedent recognizing the right of the United States to sue in order to enforce its sovereign interests. So it would be radical indeed to conclude that the United States somehow lacks standing here. And I would note that, you know, this issue went up to the Supreme Court. It was the lead issue in seeking a stay. And Justice Gorsuch, joined by Justice Alito, said, I understand this law to be, you know, acting against the state and not acting against private persons. And with that understanding, you know, I hereby join into the United States. So and the fact that we have standing against the state is sufficient to dispose of everything else. The governor and the attorney general are, of course, part of the state. We move for summary judgment in the first instance, rather than seeking discovery against how the governor has been implementing the statute, because we think we're entitled to win as a matter of law on this. It would be extraordinary to have us demand all the evidence of the governor's conversations with his law enforcement officials about implementing the law more than we need anyway. And this is cases not like any of the other cited by my opposing counsel that involves state sovereign immunity and where the injury was the threat of future enforcement. You know, the plaintiff in the Digital Recognition Network case, the claimed injury was someone's going to sue me and I'm going to have to pay money. And instead of suing, instead of bringing a pre enforcement suit against the person who would cause that injury, they tried to sue the governor and the AG. We're not here because we're afraid the governor and the AG is going to sue us. We are here because state law enforcement officials who are under the state's leadership and direction are currently implementing a statute in a way that is harmful to us, making it harder for us to go after violent criminals. Do you do you agree that the Section 1.440 is is really is doing no work here in the statutory scheme? I mean, it purports to impose an affirmative duty on the courts and law enforcement agencies of the state to protect the rights of law abiding citizens. I don't know exactly what that means, but just the lines drawn in Prince that says that states can refuse to help, but they can't impose affirmative burdens. But Prince actually says that Prince says states cannot enact laws that impose affirmative obstacles to federal law. Those are ipso facto void. And whatever this provision means, it is void because it purports to to impose a duty. And I think, you know, this court doesn't need to parse this section by section. The court merely needs to recognize that the that this is sort of riddled with unconstitutional provisions. They were all enacted as a single sub chapter. They cross reference each other. The cornerstone is the purported declaration with force of state law that five categories of federal law are unconstitutional. And there is no way to sort of take out one provision here or there. The more respectful thing to do in the Missouri Supreme Court, severability is a question of state law, ultimately. And the Missouri Supreme Court recognizes that, you know, at some point, judicial surgery is just way too much. We leave it to the legislature to do something again that is constitutional rather than trying to radically, you know, excise all of the many problems in the statute. And here you would affirmably have to introduce words into the statute to take the place of references to infringements in Section 1.420. I would also dispute the notion that I apologize. I've lost track of my clock on here. I'm not over my time. Please tell me if I am. The you have about four plus minutes left. OK, I mean, I just wanted to respond to the point that 1.420 and 1.430 or somehow you should you should consider them separately. The first one is just a declaration that has no effect. And the second one is just a truism that federal laws are unconstitutional, unconstitutional. We have to read these two together. 1.420 says these are all the laws that are infringing. 1.430 says infringing laws are shall be invalid to the state, shall not be enforced by the state, shall be specifically rejected by the state. That is those two things together is the state saying these federal laws are unconstitutional on that. It's hard to see that as anything other than sending a very substantive message to the people of the state, particularly with the right causes of action that it creates people to go out. And we're concerned about it. I want to make one point about something in our briefing. We pointed to we're concerned about confusion. I think maybe a better label than confusion is that we're concerned about inhibited compliance with federal law and perhaps even outright defiance of federal law. Because federal firearms licensees can read this statute and think that it's the state telling them, assuring them that federal laws are unconstitutional. We're concerned that if U.S. Marshall is going to pick up a fugitive who's wanted in a 922 G-8 arrest warrant, that that fugitive might think he or she has a right under, you know, the state has said that this is an illegitimate federal prosecution. I mean, the last thing we want is a violent confrontation over the proper enforcement of federal law. And so words have meaning, words enacted into law with the force of law certainly have meaning. And so I take my opposing colleague to not even be defending the nullificationist rhetoric, as he put it, but this is enacted into the Missouri revised statutes. And he's speaking to the people of the state. And that is, you know, the district court correctly recognized that that is beyond the state's power to do. The state, the state's argument said earlier this morning that you're relying on Ex parte Young only, I think, was the argument as the basis for a lawsuit. I understood. I understood your brief to say the government could sue in equity. Could you specify what is the basis for your cause of action? They're related theories, Your Honor. Ex parte Young is really a doctrine of state sovereign immunity, an exception to state sovereign immunity that allows private individuals to sue state officers to enjoin unconstitutional conduct. And that's sort of one application of the broader rule that there is a cause of action to sue people to enjoin unconstitutional conduct. And that is a cause of action. But those suits are typically under Section 1983. It could be if they're brought against a state official. But you don't need a 1983 label on that. You can sue, you know, because you think something is preempted. What's the basis for your suit is my question. What are you relying on? If not 1983, what is the... Sanitary District of Chicago, United States versus Minnesota, this court's decisions in Griffin and Fitzgerald, all of which recognize that the United States has the ability to apply to its courts where its sovereign interests are injured. And that is a longstanding equitable cause of action. It would defy history and tradition to say that we don't have a cause of action here. One of the things my opposing colleague says, well, where did Congress enact a statute that allowed those? You don't need a Congress to act to do this. United States versus Mississippi from 1965. That was one where the U.S. did have a statutorily created cause of action to enforce the Voting Rights Act, but the Supreme Court said it didn't need it. The Attorney General didn't need it to bring that lawsuit. So it's wrong to say that we are limited by the bounds of ex parte here. That is ultimately a doctrine of state sovereign immunity. Although, you know, there are certain relationships to Article III, as Your Honor has noted in prior opinions, it's different than the cause of action question. Counsel, I have a question about remedy that probably just reflects I haven't studied it enough. But my understanding is the district court has ordered Missouri officials to go back to the table in these joint exercises that is part of the basis of your claim of injury. And it seems to me that would violate Prins. That is a federal judge, not a federal statute. A federal judge ordering the state to devote its resources to collaborative efforts. If I misread the remedy and if that's a correct reading of the remedy, isn't it over broad? It's it's that's not what the district court ordered. Also, it seems to be how the briefs interpreted it. Well, the important part is at the very end of what I'm about to read, but I'm going to read you the whole thing for completion. State and local law enforcement officials in Missouri may lawfully participate in joint federal task forces, assist in investigation and enforcement of federal firearms crimes and fully share information with the federal government without fear of 80 to 85 penalties. This isn't a provision that says that anyone has to cooperate. They don't they don't have to cooperate. This doesn't even say that the state can't bar cooperation from otherwise willing persons in the future because the state can the state can withdraw the ability of Jackson County and St. Louis County to to, you know, to our consternation. They can do that if it passes a constitutional statute. All this provision is saying is set HB 85 to the side and folks who want to act as they otherwise are authorized by state law to act can do so. Without fear of HB 85 penalties and and the word may not shall participate. Thank you. Last point, we understand the injunction to be applied to applying against state courts or state clerks. That was a feature of opposing counsel's argument in some of his papers. We understand this to function against the executive apparatus of the state. All right. Thank you. Is there time for rebuttal? Yes, your honor. Up there.  Two minutes, 50 seconds. Counsel. May it please the court. Judge Colton, I want to hop right into your question of what if we had this other statute that did all the same stuff but didn't declare or didn't create an opinion that this is unconstitutional? And I heard my friend on the other side to say that they're basically OK with that. And I think what that means is that the United States is much more upset about what the statute says than what it does. They're upset about some of the rhetoric in the statute. The statute that you cited, Judge Colton, or that you created a hypothetical about is the same statute we have here, just minus the rhetoric. On the issue of the cause of action, they're asking this question. Well, what do you mean by the rhetoric? What do you mean by the rhetoric? They say throughout their brief that they don't like what we have done here because it creates confusion. They're concerned that people will interpret this to mean what? That's their injury. That's their alleged injury. But I think their argument is that the statute declares the federal law invalid, which is different from just withdrawing resources. Do you want to speak to that? It's not rhetoric. It's an actual operative effect of the statute is their point. Go ahead. And my point is there's no actual operative effect there. That statute is doing the exact same thing as the statute that you created a hypothetical about earlier. It's purely declaratory. I mean, if 1.420 says the sky is purple, that's a wrong statement. And the United States might disagree with that, and they might say it creates confusion with scientists across the country. But that's not operative. It's not changing the way the statute operates. On the cause of action issue, they're doing the exact same playbook that they tried in the Fifth Circuit in the United States against Texas case. And Texas rejected their arguments there. So they're asking this court to split from Texas on that issue. On the issue of intergovernmental immunity, they say that this is discriminatory because it applies to former federal officials. What they forget to mention is this also applies to former state officials who engage in violations or who help enforce these provisions. That's 1.460. On the deputization issue, they put a lot of stock in this term deputy, as if there's a federal lock-in effect when a state official agrees to become deputized. But all the statutes say that the deputization process is a voluntary agreement between the federal government and the state. And what we have here is a statute that said, OK, well, we the state are no longer voluntarily agreeing to that sort of situation. We would like to withdraw from that, please. And they're trying to say, well, we have to be locked in. Now, if they wanted to bring contract place, contract claims or something like that, they could, but they haven't brought those here. And if I could just unless the court has any further questions, if I could just briefly conclude that the United States has asked for an injunction not to free itself from regulation, but to free Missouri agencies from regulation. This court should stop that interference with the state's core Tenth Amendment authority and should permit the people of Missouri to keep their own local governments accountable. Thank you. Thank you, counsel. Case has been thoroughly briefed and argument and well argued. Arguments been helpful and we will take it under advisement. 11 o'clock for our. Yep. Dutch Collin, 11 o'clock. Okay. Very good. The board is in in recess until further call.